J-A17009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JACK HYNSON | : | |
| | : | |
| Appellant | : | No. 1037 EDA 2016 |

Appeal from the Judgment of Sentence March 3, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001272-2015

BEFORE: GANTMAN, P.J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED AUGUST 31, 2017**

Appellant, Jack Hynson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial conviction for escape.[1] We affirm.

The trial court opinion sets for the relevant facts of this case as follows:

> On March 23, 2007, [Appellant] pled guilty to aggravated assault and possessing instruments of crime [("PIC")] and, on June 14, 2007, was sentenced to 7½ to 15 years of incarceration on the aggravated assault charge and 2½ to 5 years of incarceration on the PIC charge, to run concurrently. [Appellant] was paroled on May 27, 2014….

(Trial Court Opinion, filed September 27, 2016, at 1). Appellant was

---

[1] 18 Pa.C.S.A. § 5121.

---

*Retired Senior Judge assigned to the Superior Court.

released on parole to the Kintock-Erie Parole Violation Center ("KPVC"). On

September 9, 2014, Appellant absconded from KPVC. Appellant turned

himself in on December 1, 2014, and was subsequently detained as a parole

violator in the parole violator section of KPVC.

The trial court opinion continues:

> On December 15, 2014, at approximately 1:10 p.m.,
> [Appellant] was escorted to Episcopal Hospital
> ("Episcopal") on an approved emergency medical pass.
> Upon arrival, a paramedic opened the ambulance door and
> [Appellant] ran from the ambulance and Michael Marrero,
> the [KPVC] resident supervisor who had accompanied him.
> Mr. Marrero instructed [Appellant] to stop several times,
> but he failed to comply. Mr. Marrero never gave
> [Appellant] permission to leave his custody.

(*Id.* at 1-2) (internal citations to record omitted). Police arrested Appellant

on December 23, 2014. The Commonwealth charged Appellant with escape.

On October 22, 2015, Appellant proceeded to a bench trial. The trial

court opinion continues:

> The [c]ourt colloquied [Appellant] on whether he wished to
> testify at trial. After stating that he had decided to testify,
> on direct examination [Appellant] testified solely about a
> document containing the conditions governing his parole
> and re-parole. The Commonwealth then cross-examined
> [Appellant] on the events that took place on December 15,
> 2014, the day of his escape. [Appellant] testified that on
> December 15, 2014, he was transported to Episcopal in an
> ambulance with Mr. Marrero escorting him. [Appellant]
> was escorted to the hospital for chest pains that he had
> been experiencing that day and the day before. Upon
> arriving at Episcopal, [Appellant] informed Mr. Marrero
> that he wanted to go to Temple Hospital, but Mr. Marrero
> refused. [Appellant] testified that Temple Hospital had his
> records since he had been there the day before, also
> because of his chest pains. He further testified that the

only hospitals that had records about this condition were Temple Hospital and Aria Hospital. [Appellant] proceeded to walk from Episcopal to Temple Hospital after Mr. Marrero told him he was to be treated at Episcopal. [Appellant] testified that, after walking to Temple Hospital, he called [KPVC] and was informed that he was in escape status and a warrant was going to be issued for his arrest. [Appellant] never attempted to return to [KPVC]. Despite knowing a warrant for his arrest was going to be issued, [Appellant] never turned himself in to the police.

(*Id.* at 2-3) (internal citations to record omitted)

Mr. Marrero testified at trial on behalf of the Commonwealth. Mr. Marrero testified that he was a resident supervisor at KPVC on December 15, 2014. Mr. Marrero explained that, generally, KPVC permitted a resident to leave the facility unsupervised via ambulance to receive medical attention. Mr. Marrero added that a resident must report back to KPVC after receiving treatment. Mr. Marrero further explained that when a parole violator requires medical attention, a KPVC supervisor escorts the parole violator to the hospital, remains with the parole violator throughout treatment at the hospital, and transports the parole violator back to KPVC. Mr. Marrero admitted he had no independent recollection of the incident, but he recalled Appellant and the incident after he reviewed the Emergency Occurrence Report he had drafted to document the December 15, 2014 incident. (N.T. Trial, 11/24/15, at 35-43).

Jason McClean, a Department of Corrections employee, also testified on behalf of the Commonwealth. Mr. McClean testified that he is a contract facility coordinator for the Department of Corrections. Mr. McClean

explained he is responsible for maintaining the records for contract facilities in Philadelphia that house parole violators and parolees, such as KPVC. Mr. McClean stated he maintains records that show inmate transfers from facility to facility, as well as inmates' violations, dates of arrival, participation in programs, and medical and legal status. Mr. McClean testified the records he maintains are created by someone with knowledge of the records' content at or near the time they were created. Mr. McClean said he is a custodian of inmate records for parolee and parole violation centers in Philadelphia. Mr. McClean explained Mr. Marrero's Extraordinary Occurrence Report indicates that as of December 15, 2014, Appellant was a parole violator. (N.T. Trial, 10/22/15, at 9-49).

Mr. McClean also testified that, in general, a Pennsylvania Board of Probation and Parole Checklist ("Checklist") documents the status of a parolee, including the terms of parole a parolee violated and where a parolee was detained. Mr. McClean stated a member of the Central Referral Unit at the Department of Corrections creates the Checklist after a supervising agent reports a violation. Mr. McClean explained Appellant's Checklist specifically lists Appellant as an "absconder," and places Appellant at KPVC. Mr. McClean also testified that a residents' confinement within the parole violator section of KPVC signifies the resident had violated parole. (*Id.*)

On November 24, 2015, the court convicted Appellant of escape. The court sentenced Appellant, on March 3, 2016, to eleven and a half (11½) to

twenty-three (23) months' incarceration, plus three (3) years' probation. Appellant timely filed a notice of appeal on March 31, 2016. On April 4, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on August 4, 2016.[2]

Appellant raises the following issues for our review:

> [WHETHER] THE EVIDENCE WAS INSUFFICIENT TO PROVE [APPELLANT] GUILTY BEYOND A REASONABLE DOUBT OF ESCAPE WHERE THE EVIDENCE WAS INSUFFICIENT TO PROVE APPELLANT WAS IN OFFICIAL DETENTION?
>
> [WHETHER] THE [TRIAL] COURT ABUSED ITS DISCRETION AND VIOLATE[D] APPELLANT'S RIGHT TO CONFRONT WITNESSES AGAINST HIM UNDER THE STATE AND FEDERAL CONSTITUTIONS BY ALLOWING THE ADMISSION OF TESTIMONIAL AND UNRELIABLE DOCUMENTARY EVIDENCE TO PROVE AN ELEMENT OF THE OFFENSE?

(Appellant's Brief at 3).

In his first issue, Appellant argues the evidence at trial was insufficient to sustain a conviction for escape. Specifically, Appellant contends the Commonwealth failed to prove Appellant was in "official detention" at KPVC on December 15, 2014. Appellant avers the Commonwealth presented inconclusive evidence that Appellant was detained as a parole violator at the

---

[2] In its Rule 1925(b) order, the court directed Appellant to file a Rule 1925(b) statement within 21 days from the entry of the court's Rule 1925(b) order or 21 days after the trial transcripts became available, whichever occurs later. In his Rule 1925(b) statement, Appellant provided that he received the trial transcripts on July 21, 2016.

time of the incident. Appellant insists he did not violate the escape statute, because the statute expressly excludes from the meaning of "official detention" those individuals who are on parole supervision. Appellant asserts Mr. Marrero testified he had no independent recollection of Appellant or the status of his parole at the time of the incident. Appellant concludes he is entitled to a new trial or to have his conviction reversed. We disagree.

Preliminarily, an argument that the fact-finder should have discredited a witness' testimony goes to the weight of the evidence, not the sufficiency of the evidence. *Commonwealth v. W.H.M.*, 932 A.2d 155, 159-60 (Pa.Super. 2007). *See also Commonwealth v. Lewis*, 45 A.3d 405, 409 (Pa.Super. 2012) (reiterating that sufficiency of evidence review does not include assessment of credibility of witness' testimony; if challenge requires court to review credibility of witness' testimony, claim is actually weight of evidence challenge). "A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). A weight claim must be presented to the trial court while it exercises jurisdiction over a matter because "appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict was against the weight of the evidence." *Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa.Super. 2003).

Failure to raise a weight of the evidence claim in the trial court will result in waiver of the issue on appeal, regardless of whether the appellant raises the issue on appeal or the trial court addresses the issue in its Rule 1925(a) opinion. ***Commonwealth v. Sherwood***, 603 Pa. 92, 110, 982 A.2d 483, 494 (2009), *cert. denied*, 559 U.S. 1111, 130 S.Ct. 2415, 176 L.Ed.2d 932 (2010).

Additionally, issues not raised in a Rule 1925 concise statement of errors are deemed waived. ***Commonwealth v. Castillo***, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting ***Commonwealth v. Lord***, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*." ***Commonwealth v. Hill***, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011).

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually

received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

Section 5121 of the Crimes Code defines escape, in pertinent part, as follows:

**§ 5121. Escape**

**(a) Escape.**—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

\* \* \*

**(e) Definition.**—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S.A. § 5121(a), (e). "Official detention" under Section 5121 includes "any…detention for law enforcement purposes" where "the police have restrained the liberty of a person by show of authority or physical force." *Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa.Super. 2008), *appeal denied*, 605 Pa. 683, 989 A.2d 916 (2010) (quoting *Commonwealth v. Stewart*, 648 A.2d 797, 798 (Pa.Super. 1994)). An individual is in

- 8 -

"official detention" if, under the totality of the circumstances, a reasonable person would not believe he is free to leave. **Santana, supra** at 452.

Although Section 5121 exempts general parole supervision from the definition of "official detention," our Supreme Court has construed "official detention" broadly to mean the restraint of a detainee's "liberty to come and go as [the detainee] pleases," regardless of the facility in which the detainee was confined. **Commonwealth v. Wegley**, 574 Pa. 190, 197, 829 A.2d 1148, 1152 (2003). This Court has held that an individual detained as a parole violator is under "official detention":

> Once a parolee is arrested and detained for failing to report, and acknowledges he is essentially in prerelease status, he is in official detention for purposes of [S]ection 5121, just as any other person placed in custody is. As such, he can hold no reasonable expectation that he retains the liberties and freedoms customary to a person operating under "supervision of parole."

**Commonwealth v. Maldonado**, 966 A.2d 1144, 1147 (Pa.Super. 2009), *appeal denied*, 605 Pa. 672, 989 A.2d 8 (2010) (determining parole violators detained in official housing facility from which they may not leave without permission pending parole violation adjudication are under "official detention"). **See also Commonwealth v. Williams**, 153 A.3d 372, 379 (Pa.Super. 2016) (affirming judgment of sentence for escape conviction, where parole violator fled from his supervisor after supervisor escorted parolee from parole violation center to hospital in ambulance).

Instantly, as of December 15, 2014, Appellant was a parole violator

detained in KPVC and resided in the parole violator section of KPVC. Therefore, Appellant was under "official detention" for purposes of the escape statute. **See Wegley, supra**; **Maldonado, supra**. On December 15, 2014, Mr. Marrero, a KPVC resident supervisor, escorted Appellant to the hospital in an ambulance. Upon arriving at the hospital, Appellant fled. During Appellant's flight, Mr. Marrero told Appellant he could not leave and commanded him to return. Appellant, however, continued to flee and failed to return to KPVC. Based on the foregoing, the Commonwealth presented sufficient evidence to allow the court to find Appellant guilty of escape. **See Hanlsey**, **supra**; **Williams**, **supra**. To the extent part of Appellant's argument actually questions the credit the court gave to Mr. Marrero's testimony, Appellant's challenge is to the weight of the evidence, not the sufficiency of the evidence. **See W.H.M., supra**; **Wilson, supra**. The record does not indicate Appellant raised this weight claim orally prior to sentencing, by written motion prior to sentencing, or in a timely filed post-sentence motion. **See** Pa.R.Crim.P. 607(A). Further, Appellant failed to include in his Rule 1925(b) statement a general challenge to the weight of the evidence and a specific challenge to the credibility of Mr. Marrero's trial testimony. **See Castillo, supra**. Thus, any challenge on appeal to the weight of the evidence is waived. **See Sherwood, supra**; **Castillo, supra**. Accordingly, Appellant's first issue merits no relief.

Next, Appellant complains the admission at trial of the "Offender

Placement Checklist" from the Pennsylvania Board of Probation and Parole violated his constitutional right to confront witnesses against him. Appellant submits the document was testimonial hearsay, based on its purpose, and admitted at trial as substantive evidence. Appellant maintains the document was prepared to prove a fact that could be used in criminal prosecution. Appellant insists admission of the document was error because the person who prepared the document did not testify at trial; instead, the custodian of records was permitted to interpret the notations on the checklist indicating that Appellant was a parole violator. Appellant argues the custodian of records served as a constitutionally impermissible surrogate to testify about Appellant's parole violator and custody status. Appellant concludes he is entitled to a new trial or to have his conviction reversed on this ground. We disagree.

The standard of review for the admission of evidence is:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown

- 11 -

by the evidence or the record, discretion is abused.

***Commonwealth v. Levanduski***, 907 A.2d 3, 13-14 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 711, 919 A.2d 955 (2007) (internal citations omitted).

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

### Rule 801.  Definitions That Apply to this Article

**(a) Statement.**  "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

**(b) Declarant.**  "Declarant" means the person who made the statement.

**(c) Hearsay.**  "Hearsay" means a statement that

(1)  the declarant does not make while testifying at the current trial or hearing; and

(2)  a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Abbe F. Fletman, we conclude Appellant's second issue merits no relief.  The trial court opinion comprehensively discusses and properly disposes of Appellant's second issue.  (**See** Trial Court Opinion, filed September 27, 2016, at 9-12) (finding: checklist met business record exception to hearsay rule; Jason McClean, Department of Corrections, testified he maintains records for facilities which house parole violators; Mr. McClean specifically stated he is

custodian of records, including checklists, which are created for administrative purposes at or near time of recorded incidents, such as inmate transfers from facility to facility, violations, dates of arrival, programs, and medical and legal status; Mr. McClean had sufficient knowledge about how checklists are made and kept, so he could properly authenticate Appellant's checklist as business record; whether business record is subject to Confrontation Clause depends on why record was originally created; Mr. McClean testified that checklist is generated to ensure parolee's proper placement and treatment needs; Appellant's checklist was not prepared to establish any fact relevant to criminal prosecution; rather, reason for checklist was to serve ongoing administrative purpose; as qualified business record created and maintained for neutral purpose, content of checklist was not testimonial evidence; admission of checklist did not violate Appellant's right to confront witnesses).  The record supports the trial court's rationale.  Therefore, as to Appellant's second issue, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY FIRST JUDICIAL
DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0001272-2015

VS.

JACK HYNSON

CP-51-CR-0001272-2015 Comm. v. Hynson, Jack
Opinion

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
7504374901

OPINION

*1037* EDA *2014* **FILED**

SEP 27 2016

Criminal Appeals
First Judicial Distric

Following a bench trial, defendant Jack Hynson was found guilty of escape. Mr. Hynson filed a timely appeal in which he argues that the evidence at trial was insufficient as a matter of law to support the escape conviction. Mr. Hynson further contends that the Court abused its discretion by allowing cross-examination beyond the scope of his testimony on direct examination, re-opening the case after the Commonwealth had rested, and admitting hearsay at trial. Finally, Mr. Hynson argues that the Court violated his Sixth Amendment right to confront witnesses testifying against him. For the reasons explained below, the appellate court should affirm the guilty verdict in this matter.

## Facts

On March 23, 2007, defendant Jack Hynson pled guilty to aggravated assault and possessing instruments of crime and, on June 14, 2007, was sentenced to 7 ½ to 15 years of incarceration on the aggravated assault charge and 2 ½ to 5 years of incarceration on the PIC charge, to run concurrently. Mr. Hynson was paroled on May 27, 2014, and was subsequently detained as a parole violator in Kintock Parole Violator Center at 201 E. Erie Avenue, Philadelphia, PA. Ex. C-1A.

On December 15, 2014, at approximately 1:10 p.m., Mr. Hynson was escorted to Episcopal Hospital ("Episcopal") on an approved emergency medical pass. Notes of Testimony

("N.T.") 11/24/15 at 53:19-25. Upon arrival, a paramedic opened the ambulance door and Mr. Hynson ran from the ambulance and Michael Marrero, the Kintock resident supervisor who had accompanied him. *Id.* at 54:8-15. Mr. Marrero instructed Mr. Hynson to stop several times, but he failed to comply. *Id.* Mr. Marrero never gave the defendant permission to leave his custody. *Id.* at 55:8-10.

The Court colloquied Mr. Hyson on whether he wished to testify at trial. *Id.* at 72:25-74:7. After stating that he had decided to testify, on direct examination Mr. Hynson testified solely about a document containing the conditions governing his parole and re-parole. *Id.* at 74:18-21. The Commonwealth then cross examined Mr. Hynson on the events that took place on December 15, 2014, the day of his escape. *Id.* at 83:4-93:20. Mr. Hynson testified that on December 15, 2014, he was transported to Episcopal in an ambulance with Mr. Marrero escorting him. *Id.* at 84:11-22. Mr. Hynson was escorted to the hospital for chest pains that he had been experiencing that day and the day before. *Id.* at 83:5-10. Upon arriving at Episcopal, Mr. Hynson informed Mr. Marrero that he wanted to go to Temple Hospital, but Mr. Marrero refused. *Id.* at 86:3-10. Mr. Hynson testified that Temple Hospital had his records since he had been there the day before, also because of his chest pains. *Id.* at 86:3-8. . He further testified that the only hospitals that had records about this condition were Temple Hospital and Aria Hospital. *Id.* at 94:24-95:1-4. Mr. Hyson proceeded to walk from Episcopal to Temple Hospital after Mr. Marrero told him he was to be treated at Episcopal. *Id.* at 86:3-4, 87:2-3. Mr. Hyson testified that, after walking to Temple Hospital, he called Kintock and was informed that he was in escape status and a warrant was going to be issued for his arrest. *Id.* at 89:25-90:1-2. Mr. Hyson never attempted to return to Kintock. *Id.* at 92:15-25. Despite knowing a warrant for his arrest was

going to be issued, Mr. Hynson never turned himself into the police. *Id.* at 93:8-17. Mr. Hynson was arrested on December 23, 2014. *Id.* at 64:20-25.

## Discussion

### 1. Standard of Review

Mr. Hynson asserts that "the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that (1) Hyson unlawfully removed himself from official detention and/or failed to return to official detention following temporary leave granted for a specific purpose, and (2) that Hyson was being held in official detention at the time of his alleged escape." Appellant's Statement of Matters Complained of Appeal ("Appellant's Statement"), ¶ 4(a)-(b) (August 4, 2016).

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence at trial was sufficient to establish all elements of the crime beyond a reasonable doubt. *Com. v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010). In doing so, the appellate court views all the evidence and reasonable inferences from the evidence in the light most favorable to the verdict winner, the Commonwealth. *Id.* at 608. A conviction may be sustained wholly on circumstantial evidence, and the trier of fact – while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part, or none of the evidence. *Id.* at 601.

The evidence with all inferences in favor of the Commonwealth supports a guilty verdict for escape beyond a reasonable doubt.

### 2. The Evidence is Sufficient to Support the Escape Conviction

A person commits the offense of escape if he (1) unlawfully removes himself (2) from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. 18 Pa. Cons. Stat. §5121 (West 2014). The statute defines

3

official detention as "arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail." *Id.*

*Commonwealth v. Maldonado*, 966 A.2d 1144 (Pa. Super. 2009), controls this case. *Maldonado* presented the issue whether the escape statute excludes from its reach parole violators who have been arrested and placed in a facility pending their parole violation hearing. *Id.* at 1145. The Superior Court held that detainment in a facility that contracts with the Pennsylvania Department of Corrections pending a parole violation hearing "constrains one's freedom of movement to within the confines of a housing facility such that placement there effects the kind of detention contemplated within the meaning of Section 5121." *Id.* at 1147. The Court explained:

> Critically, each Appellee had been removed from the normal course of supervision of parole and recommitted to a detention facility pending a hearing to determine whether sufficient evidence of parole violation supported his detainment. The commitment was therefore not a term or condition of his release under supervision of parole; it was a suspension of such release, and a recommitment to official detention pending the outcome of his hearing. Breaking free from such detention is certainly among the mischief intended to be remedied by section 5121.

*Id.* at 1148.

The Commonwealth offered through Mr. Marrero that Mr. Hynson was locked down in Kintock's parole violator section. N.T. 10/22/15 at 39:18-22. Mr. Hynson could not leave Kintock custody without permission and an escort. N.T. 11/24/15 at 55:8-10. On December 15, 2014, Mr. Hynson had permission to leave Kintock to go to Episcopal with Mr. Marrero escorting him. *Id.* at 53:19-25. There is no dispute that Mr. Hynson removed himself from his

4

escort without permission. Mr. Marrero and Mr. Hynson both testified that once they arrived at ~~Episcopal, Mr. Hynson left Mr. Marrero~~ and Episcopal after he was informed that he was not allowed to leave. *Id.* at 54:11-15, 88:18-25, 89:1-4. This Court did not err as a matter of law when it found sufficient evidence of an escape.

### 3. The Evidence is Sufficient to Disprove the Defense of Duress

Mr. Hynson asserts that the evidence was insufficient as matter of law to convict him of escape because "the Commonwealth presented insufficient evidence to disprove the defense of duress beyond a reasonable doubt." Appellant's Statement, ¶ 4(c). The Commonwealth, however, was not required to disprove duress. To the contrary, the defense carried the burden of proof of duress and failed to establish the necessary requirements.

The defense must establish the following four requirements to successfully assert a duress defense: (1) the escapee must be confronted with a specific threat of death or serious bodily injury; (2) there must either be no time to complain to authorities, or a history of futile complaints; (3) there must be no evidence of force by the escapee against prison personnel or others in the escape; and (4) the escapee must return to official detention as soon as possible. *Com. v. Bros.*, 597 A.2d 1164, 1167 (Pa. Super. 1991).

"The requirements are in the conjunctive; unless all four requirements exist, the defense of duress fails." *Com. v. Kaminski*, 502 A.2d 1281, 1285–86 (Pa. Super. 1985). Only after the defense has met its burden of establishing the requirements for duress does the burden shift to the Commonwealth.

Mr. Hynson failed to establish that he was confronted with a specific threat of death or serious bodily injury or that he returned to official detention as soon as possible. Since Mr. Hynson failed to establish the requirements necessary to sustain a defense of duress, the

5

prosecution did not have to disprove any of the elements of duress beyond a reasonable doubt. *Kaminski*, 502 A.2d at 1285.

That Mr. Hynson was taken to Episcopal instead of his preferred hospital does not constitute a specific threat of death or serious bodily injury. Mr. Hynson had complained of chest pains and had appropriately been transported to a hospital where he could be treated by healthcare professionals, Indeed, the time it took for the defendant to walk from Episcopal to Temple Hospital could have been spent addressing his health concerns.

Mr. Hynson also failed to prove that he returned to official detention as soon as possible. Mr. Hynson admitted that he made no attempt to return to Kintock after leaving its custody on December 15, 2014. N.T. 11/24/15 at 92:20-25. He also admitted that he made no attempt to turn himself into the police after being informed that he was in escape status and a warrant would be issued for his arrest. *Id.* at 93:8-17. Mr. Hynson did not return to custody until he was arrested on December 23, 2014, nine days after he had left Episcopal. *Id.* at 64:22-25.

Since Mr. Hyson failed to establish the all the requirements of duress, this Court committed no error in finding the evidence sufficient to determine him guilty of escape.

### 4. The Court Did Not Abuse Its Discretion in Allowing Mr. Hynson To be Cross-Examined Beyond the Scope of his Direct Examination, Reopening the Case, or Admitting Hearsay

Mr. Hynson asserts that the Court abused its discretion in allowing cross examination of Mr. Hynson beyond the scope of his direct examination, re-opening the case, and admitting hearsay. Appellant's Statement, ¶ 4(d), (f)-(g).

When the discretion exercised by the trial court is challenged on appeal, it is not sufficient to persuade the appellate court that it might have reached a different conclusion. *Com. v. Safka*, 141 A.3d 1239, 1248–49 (Pa. 2016). "[A]n abuse of discretion is not merely an error of

judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.*

> a) The Court Did Not Abuse Its Discretion
> By Allowing Cross-Examination Beyond the Scope of Direct

The Court did not abuse its discretion by allowing the Commonwealth to cross-examine Mr. Hynson beyond the scope of his testimony on direction examination.

Cross-examination generally is limited to the subject matter of direct examination and matters affecting the credibility of the witness. Pa.R.E. 611(b). The trial court, however, has discretion to permit inquiry into additional matters as if on direct examination. *Id.*

When a defendant chooses to take the stand, he does so at the risk of being subjected to wide-ranging questioning. *Com. v. Camm*, 277 A.2d 325, 331 (Pa. 1971). In *Camm,* the defendant took the stand solely for the purpose of attacking a confession he claimed to have been coerced. *Id.* Before the defendant began testifying, his counsel stated his intention to call the defendant on the voluntariness issue only, "without any waiver of his right against self-incrimination." *Id.* After advising counsel that he would "rule on matters as they come up," the trial court allowed the prosecution to extensively cross-examine the defendant beyond the issue of voluntariness. *Id.* at 330. The Pennsylvania Supreme Court held that the trial court had committed no abuse of discretion in allowing this cross examination. The Court stated that "a defendant cannot protect himself against wide-ranging cross-examination" simply by announcing he is taking the stand for a limited purpose. *Id.* at 331. "On the contrary, he subjects himself to good-faith cross-examination and the discretionary rulings of the trial judge as to permissible scope of that cross-examination. In deciding to take the stand the defendant must weigh the risks of doing so against the risks of not doing so." *Id.*

7

The defense called Mr. Hynson as a witness and chose to subject him to cross examination without any attempt to claim the privilege against self-incrimination. N.T. 11/24/15 at 74:18-21. The Court then allowed the Commonwealth to cross examine the defendant about the events that took place the day of his escape. *Id.* at 83:1-93:25. Under *Camm*, the Court committed no abuse of discretion.

Moreover, even if the Court had committed an error, any such error would have been harmless. *Com. v. Story,* 383 A.2d 155, 162 (Pa. 1978) (holding that when an error did not prejudice the defendant, or that the prejudice was so minimal that, beyond a reasonable it did not influence the trier of fact, the error is harmless). Mr. Hynson's testimony was not used to allow the Commonwealth the meet its burden. The Commonwealth had already presented sufficient evidence to establish the elements of escape from the resident supervisor, who was with Mr. Hynson when he left his supervision, and the officer who arrested Mr. Hynson after his escape. The Court would have reached the same ruling even if it had not allowed the defendant to be cross-examined outside the scope of his direct examination. Therefore, for this independent reason, the Court did not abuse its discretion by allowing the Commonwealth to cross-examine the witness on the events surrounding his escape.

b) The Court Did Not Err By Allowing the Prosecution to Reopen Its Case

The Court did not abuse its discretion, or violate the appellant's due process rights under the federal and state constitutions by allowing the Commonwealth to reopen the record after it had rested. Under the law of this Commonwealth, a trial court has the discretion to reopen a case, before the entry of final judgment, to prevent a failure or miscarriage of justice. *Com. v. Tharp,* 575 A.2d 557, 558–59 (Pa. 1990) (listing cases).

8

Once the Commonwealth had rested, the Court heard oral argument about the admissibility of the defendant's "escape packet." N.T. 10/29/2015. The Court ruled that the packet was inadmissible because a proper foundation had not been laid. *Id.* at 42:24-25. The defense then requested a verdict of not guilty on the basis that the Commonwealth had failed to establish the necessary elements of escape. *Id.* at 44:1-3. The Commonwealth countered with a motion to reopen its case to present additional evidence. *Id.* at 44:4-7. The Court allowed the Commonwealth to reopen its case to provide additional evidence of Mr. Hynson's escape. This exercise of discretion is consistent with the holdings of many appellate courts. *Safka*, 141 A.3d 1239 (trial court did not abuse its discretion by sua sponte re-opening a case after the close of evidence to address admissibility concerns); *Tharp*, 575 A.2d 557 (no abuse of discretion where court allowed Commonwealth to re-open case to provide additional evidence after it had rested and the defense had moved for demurrer); *Com. v. Mathis*, 463 A.2d 1167 (Pa. Super. 1983) (same).

The Court did not abuse its discretion by allowing the Commonwealth to reopen its case to provide additional evidence.

c) The Court Did Not Abuse Its Discretion By Admitting Exhibit C-1C Into Evidence

This Court did not abuse its discretion by admitting into evidence Exhibit C-1C, Jack Hynson's parole board placement checklist, because a foundation was properly laid for its admission as a business record.

Records of a regularly conducted activity are excluded from the hearsay rule if the proponent of the evidence establishes:

> (A) the record was made at or near the time of the act, event or condition sought to be proved by -- or from information transmitted by -- someone with knowledge; (B) the record

9

was kept in the course of a regularly conducted activity of a business, which includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness; and (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

It is not essential for the admission of evidence under Rule 803(6) of the Pennsylvania Rules of Evidence to produce either the person who made the entries in question or the custodian of the record at the time the entries were made. *In re Indyk's Estate*, 413 A.2d 371, 374 (Pa. 1979). As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records, a sufficient basis is provided to offset the hearsay character of the evidence. *Id.* at 373.

The Commonwealth presented sufficient evidence for the admission of Exhibit C-1C, Jack Hynson's parole board placement checklist as a business record under Rule 803(6). The Commonwealth called Jason McClean, who works for the Department of Corrections, Bureau of Community Corrections. N.T. 10/22/15 at 9:24-25. He is responsible for maintaining the records for contract facilities in Philadelphia that house parole violators and parolees. *Id.* at 10:1-7. Mr. McClean maintains records that show inmate transfers from facility to facility, any violations, dates of arrival, programs, and medical and legal status. *Id.* at 10:16-20. These records are created by someone with knowledge of the records' content at or near the time they were created. *Id.* at 11:19-23. Mr. McClean had sufficient knowledge about how these records are created and

10

kept to properly authenticate them as a business record. *See In re Indyk's Estate*, 413 A.2d 371, 374 (Pa. 1979). Admitting the record did not constitute reversible error.

### 5. The Court Did Not Violate Mr. Hynson's Sixth Amendment Right To Confront Witnesses

Finally, Mr. Hynson asserts that his Sixth Amendment right to confront witnesses testifying against him was violated when the Court allowed the admission of C-1C, the parole board placement checklist. Appellant's Statement, ¶ 4(e). The Confrontation Clause, however, was not violated because no testimony was offered against him.

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S.C.A. Const.Amend. 6. The right to confront witnesses applies to state as well as federal prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause applies only to testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 821 (2006).

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *Com. v. Williams*, 103 A.3d 354, 359 (Pa. Super. 2014), *allocatur denied*, 116 A.3d 605 (Pa. 2015). They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

The Confrontation Clause does not apply to business records because they are not deemed testimony. *Crawford*, 541 U.S. at 76. In *Melendez–Diaz*, the Supreme Court noted: "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the

11

administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 324 (2009). Whether business records are subject to the Confrontation Clause depends on why the record was originally created, i.e. "whether the evidence was made for the 'purpose of establishing or proving some fact' relevant to criminal prosecution." *Com. v. Dyarman,* 73 A.3d 565, 571 (Pa. 2013).

Mr. Hynson contends that Commonwealth Exhibit C-1C, Jack Hynson's parole board placement checklist, contained testimonial evidence in the form of a notation that says "absconder." N.T. 10/22/15 at 36:9-17. Specifically, the defense objected to the fact that the checklist placed Mr. Hynson in parole violator status for absconding. *Id.* at 36:9-25. The checklist, however, was not made for the purpose of establishing a fact relevant to criminal prosecution but rather for administrative purposes. *Id.* at 10:16-20. Mr. McClean testified that these checklists are created to ensure that parolees are properly placed and to identify if the parolee is in need of treatment. *Id.* at 30:9-14. Since testimonial evidence was not offered against Mr. Hynson, his Sixth Amendment right to confront witnesses was not violated.

## CONCLUSION

For the foregoing reasons, the appellate court should affirm the guilty verdict in this matter.

BY THE COURT:

ABBE F. FLETMAN, JUDGE

Dated: September 27, 2016

12